UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

CYNTHIA BAIRD, )
)
Plaintiff, )
)
v. ) Case No. 2:22-cv-00165
)
NICHOLAS DEML, Commissioner of the )
Vermont Department of Corrections, and )
STATE OF VERMONT, )
)
Defendants. )

**OPINION AND ORDER
CONVERTING DEFENDANTS' MOTION TO DISMISS TO A MOTION FOR
SUMMARY JUDGMENT, DENYING PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT, AND GRANTING JUDGMENT IN DEFENDANTS'
FAVOR AS A MATTER OF LAW**
(Docs. 4 & 25)

Plaintiff Cynthia Baird brings this action against Defendants Nicholas Deml, Commissioner of the Vermont Department of Corrections (the "DOC"), and the State of Vermont (collectively, the "Defendants") and asserts three causes of action based on alleged violations of: (1) her due process rights under the federal and Vermont Constitutions (Count I); (2) her rights under the Vermont Constitution's Common Benefits clause (Count II); and (3) her rights under the Ex Post Facto Clause (Count III). On September 7, 2022, Defendants filed a motion to dismiss the Amended Petition. (Doc. 4.) In response, Plaintiff filed a motion for summary judgment (Doc. 25), which Defendants opposed on October 3, 2022.

While Plaintiff's motion to remand was pending, the parties stipulated that Plaintiff's opposition to Defendants' motion to dismiss would be due thirty days after the court adjudicated the motion to remand, which occurred on May 11, 2023. Plaintiff did oppose the motion to dismiss but instead cross-moved for summary judgment. The court took the pending motions under advisement on June 15, 2023.

Plaintiff is represented by Kelly Green, Esq., and Rebecca N. Turner, Esq. Defendants are represented by Assistant Attorney General Patrick T. Gaudet.

## I. The Undisputed Facts.

Plaintiff was convicted by a jury of second-degree murder in Vermont Superior Court and sentenced on November 3, 2004 to a term of imprisonment of twenty years to life. She is currently serving her sentence in DOC custody at the Chittenden County Correctional Facility in South Burlington, Vermont. Plaintiff did not have "legal trouble" before her conviction, has not had a "disciplinary conviction" in seven years, and has had "very few" disciplinary convictions during her time in custody. (Doc. 25-1 at 1, ¶ 4.) She is in remission for cancer, which was diagnosed while she was in custody, and has "a greatly increased risk of cancer due to her prior case of cancer and her significant family history of the disease." *Id.* at 2, ¶ 6. She is presently suffering symptoms and is awaiting testing and follow-up visits with specialists.

In his role as DOC Commissioner, Defendant Deml is responsible for calculating sentences and awarding sentencing credit. In 2018, the Vermont Legislature considered reinstating a program to permit Vermont inmates to earn credit toward their sentence for good behavior. Vermont had a good time credit program for forty years before it was repealed in 2005. The DOC, the Chief Vermont Superior Court Judge, the Vermont Attorney General, the Executive Director of the Department of State's Attorneys and Sheriffs, and the Vermont Defender General studied the issue and concluded good time credit would reduce incarceration costs and crime rates by as much as 3.5%. In addition, certain victims' rights groups supported the change in the law.

In 2020, the Vermont Legislature passed legislation, effective on January 1, 2021, which awarded Vermonters in DOC custody serving a sentence of incarceration or on furlough credit off their minimum and maximum sentences for each month of good behavior. 28 V.S.A. § 818. Starting on January 1, 2021, the credit was automatically applied, provided the inmate committed no disciplinary infractions. From January through April of 2021, Plaintiff earned good time credit, which shortened her minimum sentence. She retains this good time credit and has not forfeited it in any respect.

2

On April 21, 2021, following complaints from the family members of a high-profile crime victim who agreed to a plea agreement based on the perpetrator serving a certain period incarceration, the legislation was amended to state in relevant part that "an offender who was serving a sentence for a disqualifying offense [including murder] on January 1, 2021 shall not earn any earned time sentence reductions under this section after the effective date of this act." 28 V.S.A. § 818(b)(5). Then-Vermont Attorney General T.J. Donovan testified that "he was in favor of the take-back bill because a family he considered to be personal friends were greatly impacted by the uncertainty of the trial and appeal process of a man who had harmed their daughter and he wanted his friends to have peace of mind and certainty." (Doc. 25-1 at 4-5, ¶ 19.) However, certain legislators voiced concerns regarding the scope of the amendment and whether it would "create disparities between prisoners." (Doc. 25-1 at 7, ¶ 30.)

On April 26, 2021, the bill, S.18, was signed into law. Vt. 2021, No. 12, § 2. On the same day, the DOC amended its good time credit rule to reflect the amended version of § 818 and stopped awarding good time credit to inmates convicted of murder. As a result, Plaintiff stopped receiving credit for her good behavior.

## II.     Conclusions of Law and Analysis.

### A.     Whether to Convert Defendants' Motion to Dismiss to a Motion for Summary Judgment.

Where, as here, a party presents matters outside the pleadings in response to a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56[,]" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "Ordinarily, this means that a district court must give notice to the parties *before* converting a motion to dismiss pursuant to Rule 12(b)(6) into one for summary judgment and considering matters outside the pleading." *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008) (internal quotation marks omitted).

"The district court's conversion of a Rule 12(b)(6) motion into one for summary judgment is governed by principles of substance rather than form." *Id.* (internal quotation

3

marks omitted). "Even where only the party moving to dismiss has submitted extrinsic material such as depositions or affidavits, the opposing party may be deemed to have had adequate notice that the motion to dismiss would be converted[.]" *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985)). In contrast, "in a motion to dismiss under 12(b)(6), where affidavits and exhibits in addition to the pleadings are presented to and not excluded by the court, the court must convert the 12(b)(6) motion into a motion for summary judgment[]" or disregard extraneous information. *Bd. of Trs. of Teamsters Loc. 918 Pension Fund v. Freeburg & Freeburg, C.P.A.*, 1999 WL 803895, at *4 (E.D.N.Y. Sept. 28, 1999) (collecting cases).

In this case, Plaintiff elected to file a motion for summary judgment in response to Defendants' motion to dismiss. Defendants' motion to dismiss is otherwise unopposed. The parties do not dispute the material facts, although they disagree whether all the facts cited by Plaintiff are material.[1] *See In re G. & A. Books, Inc.*, 770 F.2d at 295 ("A party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc."). Under the facts and circumstances of this case, the court follows the parties' lead and converts Defendants' pending motion to dismiss to one for summary judgment. *See Parada v. Banco Indus. De Venez., C.A.*, 753 F.3d 62, 67-68 (2d Cir. 2014) (affirming the district court's discretion under Rule 12(d) to convert a motion to dismiss into a motion for summary judgment).

### B. Standard of Review.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law.'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute of fact is

---

[1] Defendants assert that Plaintiff's personal circumstances and the motives and statements of various stakeholders are not relevant. The court agrees, however, because Plaintiff has chosen to include them and Defendants have not moved to strike them, the court includes them in its recitation of the undisputed facts.

4

'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248). The court "constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in his favor." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). When the moving party has carried its burden, its opponent must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "A non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Not all disputes of fact are material. "On a motion for summary judgment, a fact is material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson*, 477 U.S. at 248).

"The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### C. Whether § 818 Violates Plaintiff's Due Process Rights Under the Federal and Vermont Constitutions.

Plaintiff seeks summary judgment, asserting § 818 violates her due process rights

5

because it automatically disqualifies her from receiving good time credit after Vermont law previously authorized such credits. Defendants argue Plaintiff has no liberty interest in continuing to earn good time credits and thus cannot establish a due process violation.

Article 4 of the Vermont Constitution provides that "[e]very person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which one may receive in person, property or character[.]" Vt. Const. ch. I, art. 4. The Vermont Supreme Court has concluded that "Article 4 [is] the equivalent to the federal Due Process Clause[,]" *Quesnel v. Town of Middlebury*, 706 A.2d 436, 439 (Vt. 1997), which states that no State shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1.

Article 10 of the Vermont Constitution states that no person can "be justly deprived of liberty, except by the laws of the land[.]" Vt. Const. ch. I, art. 10. "This phrase is synonymous with 'due process of law.'" *State v. Messier*, 497 A.2d 740, 743 (Vt. 1985) (quoting *State v. Stimpson*, 62 A. 14, 17 (Vt. 1905)). Accordingly, under Article 10, "the [L]egislature cannot deprive a citizen of an essential right secured by the bill of rights or constitution[.]" *State v. Hodgson*, 28 A. 1089, 1091 (Vt. 1894), *aff'd sub nom. Hodgson v. State of Vt.*, 168 U.S. 262 (1897). To successfully state a claim for denial of due process, "a plaintiff must assert "(1) that [he or] she possessed a cognizable liberty interest, and (2) that the defendants deprived [him or] her of that same liberty without providing process adequate to justify their actions." *Leise v. Vt. Hum. Rts. Comm'n*, 2023 WL 4247768, at *3 (D. Vt. June 29, 2023) (quoting *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005)).

The Second Circuit has held that "[a]lthough inmates have a liberty interest in good behavior credit *they have already earned*, no such interest has been recognized in the opportunity to earn good time credit where . . . prison officials have discretion to determine whether an inmate or class of inmates is eligible to earn good time credit" *Abed v. Armstrong*, 209 F.3d 63, 66-67 (2d Cir. 2000) (emphasis supplied) (citation

omitted) (collecting cases).[2] The Vermont Supreme Court has reached a similar conclusion. *See Conway v. Gorczyk*, 765 A.2d 463, 468 (Vt. 2000) ("[P]etitioner's opportunity to earn a reduction in his incarcerative term is just that, an opportunity. It is not a liberty interest that was interfered with by the state."). Plaintiff does *not* argue that she has been deprived of any good time credits she earned. She challenges only § 818's exclusion of her from the *opportunity* to earn a further reduction. There is no liberty interest at stake when a party seeks good time credits that have not yet been earned under applicable law. *Id.* at 467-68; *see also Venman v. Patrissi*, 590 A.2d 897, 898 (Vt. 1991) (holding "[t]he computation of good-time credit does not implicate fundamental rights[]").

"[A] plaintiff is only entitled to procedural due process protections once he has demonstrated that he has a liberty interest in the action being challenged." *Conway*, 765 A.2d at 468. Having concluded that Plaintiff has no liberty interest in prospectively earning good time credits, the court does not address whether the processes employed by Defendants were sufficient. *Id.*

Because Plaintiff does not have a liberty interest under either the U.S. or Vermont Constitution, Plaintiff's motion for summary judgment based on a due process violation is DENIED.

### D.  Whether § 818 Violates Vermont's Common Benefits Clause.

Plaintiff contends that barring inmates sentenced for murder before April 26, 2021 from qualifying for good time credit while allowing those convicted after that date to

---

[2] *See also Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (holding that convicted inmate with no access to good time credit program because he was incarcerated in county jail had no constitutional interest in the opportunity to earn good time credit); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (holding inmate has no liberty interest in opportunity to earn good time credit); *Conlogue v. Shinbaum*, 949 F.2d 378, 380 (11th Cir. 1991) ("When a statute is framed in discretionary terms there is not a liberty interest created.") (internal quotation marks and brackets omitted); *United States v. Sarachandran*, 2019 WL 2568712, at *2 n.2 (E.D.N.Y. June 20, 2019) (holding prospective good time credit "does not implicate any fundamental right implicitly or explicitly guaranteed by the Constitution[]") (internal quotation marks omitted); *Carter-Mitchell v. Terrell*, 2017 WL 375634, at *5 (E.D.N.Y. Jan. 26, 2017) ("[P]risoners have no liberty interest . . . in the *mere opportunity* to earn good time credits.") (emphasis in original).

qualify violates Article 7 of the Vermont Constitution, commonly known as the Common Benefits Clause. Defendant argues that the Common Benefits Clause permits different treatment of different classes of inmates and § 818, as revised by the Vermont Legislature, survives rational basis review.

Pursuant to the Vermont Constitution's Common Benefits Clause, the "government is . . . instituted for the common benefit, protection, and security of the people, nation, or community, and not for the particular emolument or advantage of any single person, family, or set of persons, who are a part only of that community[.]" Vt. Const. ch. I, art. 7. The Vermont Supreme Court has established a three-part inquiry: "(1) what 'part of the community' is disadvantaged by the legal requirement; (2) what is the governmental purpose in drawing the classification; and (3) does the omission of part of the community from the benefit of the challenged law bear 'a reasonable and just relation to the governmental purpose?'" *In re Hodgon*, 2011 VT 19, ¶ 23, 189 Vt. 265, 281, 19 A.3d 598, 608 (quoting *Badgley v. Walton*, 2010 VT 68, ¶ 21, 188 Vt. 367, 378-79, 10 A.3d 469, 476).

In defining the "part of the community" that is disadvantaged by the legal requirement, courts "examine the statutory basis that distinguishes those protected by the law from those excluded from the state's protection." *Baker v. State*, 744 A.2d 864, 878 (Vt. 1999). The next step is to examine "the government's purpose in drawing a classification that includes some members of the community within the scope of the challenged law but excludes others." *Id.* The final step requires courts to:

> ascertain whether the omission of a part of the community from the benefit, protection and security of the challenged law bears a reasonable and just relation to the governmental purpose. Consistent with the core presumption of inclusion, factors to be considered in this determination may include: (1) the significance of the benefits and protections of the challenged law; (2) whether the omission of members of the community from the benefits and protections of the challenged law promotes the government's stated goals; and (3) whether the classification is significantly underinclusive or overinclusive.

*Id.* at 878-79. "Because *Baker* sets out a flexible standard, labels like 'strict,'

8

'heightened,' or 'intermediate' scrutiny are entirely inapplicable." *Vitale v. Bellows Falls Union High Sch.*, 2023 VT 15, ¶ 23, 293 A.3d 309, 322.

"Statutes are presumed to be reasonable and constitutional." *Vt. Hum. Rts. Comm'n v. State*, 2012 VT 88, ¶ 12, 192 Vt. 552, 557, 60 A.3d 702, 706. "It is the plaintiff's burden to demonstrate that a statute does not bear a reasonable and just relation to a governmental purpose and is therefore unconstitutional." *Vitale*, 2023 VT 15, ¶ 21, 293 A.3d at 321. "To conclude otherwise would be to negate the presumption of constitutionality afforded to statutes and run contrary to [Vermont's] Common Benefits Clause precedent." *Id.* "[I]t is insufficient to assert that there is a law that results in some people having a benefit and others not, accompanied by the legal conclusion that this difference in treatment violates the Vermont Constitution." *Id.* at ¶ 24, 293 A.3d at 322.

In this case, the parties agree that the disadvantaged community is inmates in DOC custody who were sentenced for certain crimes before April 26, 2021 and are now excluded under the revised § 818. Although Plaintiff points out that some members of the Legislature were concerned with incentivizing rehabilitation and reducing the costs of incarceration, she concedes that the Vermont Legislature ultimately decided to avoid unpredictability in sentencing for crimes committed before § 818's effective date to protect the reasonable expectations of victims with regard to the sentences served by those who have perpetrated crimes against them. This is a rational legislative purpose and one the Vermont Legislature has repeatedly recognized. *See, e.g.*, 13 V.S.A. § 5303 ("The fundamental objective underlying this chapter is the protection of victims of crime. This chapter seeks to ensure that crime victims are treated with the dignity and respect they deserve while functioning in a system in which they find themselves through no fault of their own."); 13 V.S.A. § 5305 (delineating rights of crime victims, including, among others, "the right to request notification by the agency having custody of the defendant before the defendant is released" and the "right to notification of an offender's scheduled release date").

By excluding individuals who committed crimes before the enactment of § 818, victims of those crimes are able to rely on the term of imprisonment imposed at

9

sentencing. Criminal defendants similarly have notice of the term of imprisonment at their sentencing and suffer no increase of that term under § 818. Prospectively, both defendants and victims are on notice of the potential application of § 818 to a criminal sentence. In this respect, the statute is neither overinclusive nor underinclusive and serves its intended legislative purpose.

Contrary to Plaintiff's contention, the statute is neither arbitrary nor vindictive and does not deprive Plaintiff of credits previously earned. It is wholly prospective. *See* 28 V.S.A. § 818(b)(5) (prohibiting ability to earn good time credits "after the effective date of this act[]"). Plaintiff cites no authority recognizing a constitutional violation where a party is deprived of unearned good time credit.

Because Plaintiff has failed to demonstrate that § 818 does not bear a reasonable and just relation to a legitimate governmental purpose, her motion for summary judgment based on a violation of the Common Benefits Clause is DENIED.

E.     **Whether § 818 Violates the Federal Ex Post Facto Clause.**

Plaintiff argues that § 818 violates the Ex Post Facto Clause because "§ 818 extends [her] incarceration by prolonging the date that she would be entitled to consideration for parole or release from incarceration[.]" (Doc. 25 at 6.) Defendants respond that the law in effect at the time Plaintiff committed her offense did not provide the opportunity to earn good time credits, and as a result § 818 does not violate the Ex Post Facto Clause. They further point out that under the revised version of § 818, Plaintiff does not lose any good time credit she has earned.

The United States Constitution prohibits any State from "pass[ing] any . . . ex post facto Law[.]" U.S. Const. art. I, § 10. This prohibition rests "upon the notion that laws, whatever their form, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive[.]" *Lynce v. Mathis*, 519 U.S. 433, 440 (1997) (quoting *Beazell v. Ohio*, 269 U.S. 167, 170 (1925)). Ex Post Facto Clause violations inflict "a greater punishment, than the law annexed to the crime, when committed." *Id.* at 441 (internal quotation marks omitted). An Ex Post Facto violation may occur when there is a "lack of fair notice and governmental restraint [because] the

legislature increases punishment beyond what was prescribed when the crime was consummated." *Id.* (quoting *Weaver v. Graham*, 450 U.S. 24, 30 (1981)).

"Although the 'presumption against retroactive legislation is deeply rooted in our jurisprudence,' the Ex Post Facto Clause of the Constitution 'applies only to *penal* statutes which disadvantage the offender affected by them[.]'" *Doe v. Pataki*, 120 F.3d 1263, 1272 (2d Cir. 1997) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994); *Collins v. Youngblood*, 497 U.S. 37, 41 (1990)). To violate the Ex Post Facto Clause, "a law must be retrospective–that is, 'it must apply to events occurring before its enactment'–and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime[.]" *Lynce*, 519 U.S. at 441 (quoting *Weaver*, 450 U.S. at 29; *Collins*, 497 U.S. at 50).

"[A] law need not impair a vested right to violate the *ex post facto* prohibition." *Weaver*, 450 U.S. at 29 (internal quotation marks omitted). "Critical to relief under the *Ex Post Facto Clause* is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Id.* at 30. "Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense." *Id.* at 30-31.

At the time of Plaintiff's crime, the good time credit program was not in effect but rather was created approximately fifteen years after she was sentenced. Her ability to earn good time credits for several months after she was sentenced until her exclusion under the current version of § 818 does not entitle her to relief. The Vermont Supreme Court has previously decided this very issue. *See Myers v. Baker*, 2023 VT 7, ¶ 20, 291 A.3d 1278, 1285 (holding the good time program "must . . . be effective at the time of a petitioner's offense for its discontinuance to violate the Ex Post Facto Clause"). The federal courts have reached a similar conclusion.[3]

---

[3] *See, e.g., Lightsey v. Kastner*, 846 F.2d 329, 333-34 (5th Cir. 1988) (rejecting defendant's argument that an amendment to a law governing release dates "[took] away a benefit to which he

Because § 818 did not make Plaintiff's "punishment more severe than the punishment assigned by law when the act to be punished occurred[,]" § 818 does not violate the Ex Post Facto Clause in her case. The court therefore DENIES her cross-motion for summary judgment on this basis. *Weaver*, 450 U.S. at 30.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Doc. 4) is CONVERTED TO A MOTION FOR SUMMARY JUDGMENT, Plaintiff's cross-motion for summary judgment is DENIED (Doc. 25), and judgment as a matter of law is GRANTED in Defendants' favor.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 12th day of September, 2023.

Christina Reiss, District Judge
United States District Court

---

had become entitled" because the amendment was "no more onerous than the law in effect when [defendant] committed the offense"); *Breest v. Helgemoe*, 579 F.2d 95, 102-03 (1st Cir. 1978) (rejecting ex post facto argument where penalty at the time of defendant's crime was life imprisonment without parole; the statute was amended before defendant was indicted to provide for parole after eighteen years of imprisonment; and the statute was amended a second time before defendant was sentenced to provide for parole after forty years of imprisonment).